UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MURDALINE DASNEY,

                              Petitioner,

          -v-

PEOPLE OF THE STATE OF NEW YORK,

                              Respondent.

No. 15-cv-5734 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Petitioner Murdaline Dasney, proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging her conviction in New York State Supreme Court, New York County, on one count of attempted first-degree assault and one count of second-degree assault, for which she was sentenced to concurrent five- and three-year terms of imprisonment, respectively.  For the reasons set forth below, the Court denies the petition.

I. BACKGROUND[1]

A.  Facts

Petitioner's conviction arose from a 2011 incident in which Petitioner, then a resident in a homeless shelter in New York County, stabbed a security guard in the chest after an altercation relating to Petitioner's unauthorized travel to a floor of the shelter on which she did not live. Specifically, on the night of November 8, 2011, security guards Desmond Odunze and Norma

---

[1] In ruling on the petition, the Court has considered the petition, Respondent's memorandum of law in opposition to the petition (Doc. No. 11), the trial transcript (Doc. No. 12-1 at 258–432 ("Trial Tr. I") and 12-2, 12-3 at 1–176 ("Trial Tr. II")), the sentencing transcript (Doc. No. 12-3 at 177–87), and the appeal record (Doc. No. 12 ("SR")).  Although the Court construes Petitioner's *pro se* submissions liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam), the Court draws all factual inferences in favor of Respondent in light of the jury's guilty verdict, *see Quartararo v. Hanslmaier*, 186 F.3d 91, 96 (2d Cir. 1999).

Santiago were working the 4:00 p.m. to 12:00 a.m. shift at the Washington Hotel, a homeless shelter in New York County.  (Trial Tr. I at 40–42, 67, 115–117.)  They were stationed at the front desk in the lobby area of the shelter.  (*Id.* at 42, 46–48, 116.)  Petitioner and her husband lived in a room on the second floor.  (*Id.* at 57, 119.)

Earlier that evening, Odunze saw Petitioner walking down the stairs from the third floor of the shelter (one floor above where Petitioner lived).  (*Id.* at 90, 134.)  He warned Petitioner that she was not permitted to go to the third floor, and Petitioner returned to her room.  (*Id.* at 52, 82–83, 120, 133.)  Approximately one hour later, however, Odunze and Santiago saw Petitioner again walking down the stairs from the third floor of the shelter.  (*Id.* at 53, 83–84, 93, 120, 146.)  This time, Odunze told Petitioner that he would have to "write her up" for breaking the rules and going to the third floor.  (*Id.* at 53, 92–94.)  Petitioner replied, "I don't care, write me up," and "Go ahead, you can do whatever the [expletive] you want."  (*Id.* at 53–54, 95–96, 120, 133.)  Petitioner then tried to kiss Odunze.  (*Id.* at 53–55, 95–96, 120–22.)  As she leaned in, Odunze determined that Petitioner was "intoxicated" because he "could smell from her breath" that she was "drunk."  (*Id.* at 54.)  Odunze pushed her away, and she fell on the floor because "she was intoxicated."  (*Id.* at 54–55, 96–97, 122–24.)  At trial, Petitioner testified that she had consumed three 22-ounce cans of beer that night.  (Trial Tr. II at 166, 169, 186.)  Petitioner got up and went to get her husband from their room.  (Trial Tr. I at 56, 98.)

A few moments later, Petitioner emerged from her room and started screaming for her husband "to come and get [Odunze]," whom she claimed had hit her and was "trying to kiss her and wanted to have sex with her."  (*Id.* at 55–56, 98, 124, 138–39.)  Petitioner's husband did not confront Odunze, even when Petitioner began to curse at her husband, and Petitioner and her husband eventually returned to their room.  (*Id.* at 56–57, 98, 138–39.)  Odunze then went to the

front desk to write up an incident report.  (*Id.* at 59–60, 101.)  Santiago, who was already in the office area completing paperwork, called their building manager to report Petitioner's rule violation and to indicate that a report on the incident was forthcoming.  (*Id.* at 59, 125, 144–45.)

Petitioner later approached the front desk without being detected by Odunze or Santiago. (*Id.* at 60, 102, 126–27, 147.)  When Odunze – who had his back to the open office door – turned to face her, Petitioner stabbed him in the chest.  (*Id.* at 59–60, 126.)  The incident "happened quickly."  (*Id.* at 102, 147–48.)  After stabbing Odunze, Petitioner stomped her feet and said, "Bring it [expletive], I am ready for you, I am ready for you"; "[y]ou want any more[?]"  (*Id.* at 62, 127.)  Petitioner then ran into her room while Santiago called the building manager, Jae London, who in turn called the police.  London arrived at the shelter shortly thereafter.  (*Id.* at 62, 127, 148, 152, 155, 170–71.)  When London asked Petitioner why she had stabbed Odunze, Petitioner replied, in a "nonchalant" manner, that she did not know the reason why, and she "kind of shrugged her shoulders."  (*Id.* at 155.)  A police officer, Alvin Rivera, later arrived at the shelter and visited Petitioner's room, where Petitioner was sitting on the bed.  (Trial Tr. II at 22–26.) Officer Rivera asked Petitioner about the location of the knife, and Petitioner replied, "What knife?" and acted "as if she didn't know what [Rivera] was talking about."  (*Id.* at 26.)  After asking Petitioner to step out of the room, Officer Rivera quickly looked around the room for the knife but could not find it.  (*Id.* at 27, 51–53.)  Officer Rivera then arrested Petitioner.  (*Id.* at 27.)

Paramedics brought Odunze to the trauma center at St. Luke's Roosevelt Hospital.  (*Id.* at 63–64, 110.)  There, Odunze was treated by, among others, Dr. Barbara Wexelman, who was the chief surgical resident at St. Luke's Roosevelt.  (*Id.* at 97, 99–106.)  After determining that Odunze had not sustained any injuries to his vital organs, Dr. Wexelman stapled the stab wound closed and released Odunze after approximately 36 hours of observation and testing.  (*Id.* at 101–05, 108–10,

112–15.)  As a result of the stabbing, Odunze continued to suffer some residual pain; he also sustained a one-inch scar that he displayed to the jury at trial. (Trial Tr. I at 61, 63.)

Approximately one or two months after the stabbing, Washington Hotel homeless shelter staff alerted London, the building manager, that they had found a knife in the back yard of the shelter.  (Trial Tr. I at 156–57, 167, 169–70.)  London sent a photo of the knife to Odunze and asked him whether it resembled the knife that Petitioner had used to stab him.  (*Id.* at 105–06, 169–70.)  When Odunze confirmed that the knife in the photo was the knife that Petitioner had used to stab him, London turned it over to the police.  (*Id.* at 105–06, 169–70.)

### B.  Procedural History

#### 1.  Trial Court Proceedings

Trial commenced in New York State Supreme Court, New York County, on September 6, 2012.  (*Id.* at 1.)  At trial, the prosecution called Odunze (*id.* at 36), Santiago (*id.* at 114), London (*id.* at 149), an EMT who treated Odunze (Trial Tr. II at 5), Officer Rivera (*id.* at 18), and Dr. Wexelman (*id.* at 96); the defense called an investigator with the Legal Aid Society (*id.* at 129) and Petitioner (*id.* at 143).  On September 17, 2012, the jury found Petitioner not guilty of attempted second-degree murder, but guilty of attempted first-degree assault and second-degree assault.  (*Id.* at 340–42.)  On October 22, 2012, the trial court sentenced Petitioner to concurrent prison terms of five and three years on those two counts, respectively, to be followed by three years of post-release supervision. (Sent'g Tr. at 10–11.)

#### 2.  Direct Appeal

Petitioner appealed her conviction and sentence to the New York Supreme Court Appellate Division, First Department, claiming that:  (1) due to her intoxication, the evidence of her intent was legally insufficient, and the verdict was against the weight of the evidence, and (2) her sentence was harsh and excessive.  (SR 001–041.)  On March 17, 2015, the Appellate Division

unanimously affirmed Petitioner's conviction, rejecting both of these arguments.  *See People v. Dasney*, 126 A.D.3d 521 (1st Dep't 2015).   Petitioner then sought leave to raise her legal sufficiency claim in the New York Court of Appeals (SR 087–088), which the Court of Appeals denied on May 28, 2015 (SR 092).  *See People v. Dasney*, 25 N.Y.3d 1071 (2015).

### 3.  Federal Habeas Petitions

Petitioner filed the instant petition for habeas relief on July 20, 2015.  (Doc. No. 1 ("Pet.").)  As grounds for relief, Petitioner makes several assertions, including that she has no criminal record, has potential for rehabilitation, did not seriously injure Odunze, was "very drunk" at the time of the stabbing, and that the prosecution failed to prove her guilt beyond a reasonable doubt because the evidence established that Petitioner's intoxication caused her to act recklessly.  (Pet. at 6, 8.)  The Court construes these assertions as claims that (1) the evidence at trial was insufficient to support the requisite mental state (intent) because of Petitioner's intoxication, and (2) Petitioner's sentence was excessive.  *See Haines*, 404 U.S. at 520–21 (*pro se* allegations are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers").  Respondent filed an answer and opposition to the petition on October 27, 2015.  (Doc. Nos. 10, 11.)  As of the date of this Order, Petitioner has not filed a reply, which was due within 30 days after service of Respondent's answer.[2]

---

[2] On June 29, 2015, Petitioner initiated a separate action in the United States District Court for the District of Idaho, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (16-cv-1006, Doc. No. 1.)  On November 5, 2016, that case was transferred from the District of Idaho to the Western District of New York (16-cv-1006, Doc. No. 8), and on February 10, 2016, from the Western District of New York to the Southern District of New York (16-cv-1006, Doc. No. 10).  On February 11, 2016, this Court accepted the case as related to the instant action, which at that point had been fully briefed.  Because the petition originally filed in the District of Idaho and the instant petition sought relief from the same conviction on the same grounds, the Court dismissed the un-briefed District of Idaho petition as duplicative on August 1, 2016.  (16-cv-1006, Doc. No. 12.)  Petitioner appealed that dismissal on August 10, 2016 (16-cv-1006, Doc. No. 13), and on September 22, 2016, the Second Circuit issued a mandate dismissing that appeal due to Petitioner's failure to pay the filing fee (16-cv-1006, Doc. No. 14).

II. LEGAL STANDARD

A federal court may grant habeas corpus relief only if a claim that was adjudicated on the merits in state court (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Clearly established Federal law means the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (internal quotation marks omitted). A state court decision is "contrary to" such a holding only where the state court "either 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result].'" *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 402 (2000)). An "'unreasonable application of' those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted). A federal court should grant habeas relief only if "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

III. DISCUSSION

A. Insufficiency of the Evidence

Petitioner argues that the evidence at trial was insufficient to establish her intent to injure Odunze because she was intoxicated at the time of the stabbing. A state prisoner "state[s] a federal constitutional claim" by alleging that "the evidence in support of h[er] state conviction cannot be

fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 321 (1979).  In determining whether a state conviction will be upheld, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.  Where a reviewing court is "'faced with a record of historical facts that supports conflicting inferences,'" the court "'must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) (per curiam) (quoting *Jackson*, 443 U.S. at 326).  Moreover, a challenge to a state court's legal sufficiency decision "face[s] a high bar in federal habeas proceedings because [it is] subject to two layers of judicial deference":  first, to the jury's verdict, and second, to the state court's conclusion that the evidence was sufficient.  *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012); *accord McDaniel v. Brown*, 558 U.S. 120, 132–33 (2010).

Here, Petitioner was convicted of (1) attempted first-degree assault and (2) second-degree assault.  A person is guilty of attempted first-degree assault when, "[w]ith intent to cause serious physical injury to another person . . . by means of a deadly weapon or a dangerous instrument," she "engages in conduct which tends to effect the commission of [that] crime."  N.Y. Penal Law §§ 100.00 (attempt), 120.10.1 (assault in the first degree).  A person is guilty of second-degree assault when, "[w]ith intent to cause physical injury to another person, [s]he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument."  *Id.* § 120.05.2.

Addressing the sufficiency of the evidence on direct appeal, the Appellate Division held that "[t]he evidence supports the conclusion that although intoxicated, [Petitioner] had the intent to cause serious physical injury when she stabbed the victim in the chest."  *Dasney*, 126 A.D.3d at

521. The court further found that "[t]he circumstances of the crime were indicative of a deliberate attack" and that Petitioner's "purposeful efforts to cover up" the crime "immediately after the stabbing" provided "additional support for the conclusion that [Petitioner's] intoxication did not render her incapable of forming the requisite intent." *Id.* (citing *People v Sanchez*, 298 A.D.2d 130 (1st Dep't 2002)).

Upon review of the trial record, the Court finds that the Appellate Division's decision is clearly supported by the evidentiary record.  Notably, Petitioner does not dispute that she stabbed Odunze in the chest with a knife.  She challenges the sufficiency of the evidence only on the ground that, due to her intoxication, she acted recklessly, rather than intentionally, as required for first- and second-degree assault.  (Pet. at 6, 8.)  However, "[a] person who is intoxicated may possess the requisite intent to commit a crime." *People v. Mercado*, 200 A.D.2d 424, 425 (1st Dep't 1994). "Intoxication is not a defense but merely a matter to be considered by the fact finder in determining whether it negates an element of the crime charged." *Id.* at 424; *see also People v. Beaty*, 22 N.Y.3d 918, 921 (2013).  Thus, "it is for the finder of the facts to decide if the extent of the intoxication was such as to negate the element of intent." *Mercado*, 200 A.D.2d at 425; *see, e.g.*, *People v. Natal*, 100 A.D.3d 509, 509 (1st Dep't 2012) ("The evidence supported the trier of fact's determination that although intoxicated, defendant had the intent to cause serious physical injury when he stabbed the victim in the chest." (citation omitted)).

Here, the trial court properly instructed the jury on Petitioner's intoxication defense (Trial Tr. II at 274), but the jury nevertheless found the requisite intent.  Given the jury's finding and the Appellate Division's conclusion that "[t]he circumstances of the crime were indicative of a deliberate attack," *Dasney*, 126 A.D.3d at 521, the Court sees no basis for overturning the jury's verdict.  On the contrary, Petitioner's intent is amply supported by the facts that (1) the stabbing

occurred a short time after an altercation between Petitioner and Odunze, (2) Petitioner was able to avoid detection by stealthily approaching Odunze with the knife, and (3) Petitioner attempted to conceal the crime by throwing the knife out the window and denying knowledge of the knife when questioned by Officer Rivera.   Furthermore, to the extent Petitioner's contention that Odunze's wounds were "non-life-threatening" (Pet. at 8) is offered in support of her argument that she lacked the requisite intent, the Court finds that the location of Odunze's stab wound (his chest) supports the opposite inference.   In other words, Petitioner stabbed Odunze in a potentially life-threatening part of his body; the fact that she ultimately failed to cause grave harm does not support an inference that she lacked intent to cause serious physical injury to Odunze.   Accordingly, the Court finds that Petitioner has fallen well short of demonstrating that "the evidence in support of h[er] state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 321.

## B.  Excessive Sentence

Finally, Petitioner appears to argue that her sentence is excessive because she has no prior criminal record and has potential for rehabilitation.  (Pet. at 6, 8.)  To begin with, this claim is procedurally defaulted.  "[A] prisoner in custody pursuant to a state court judgment must generally exhaust state court remedies before seeking federal habeas corpus review." *Jones v. Murphy*, 694 F.3d 225, 246–47 (2d Cir. 2012) (citing 28 U.S.C. § 2254(b)(1)).  Moreover, if a federal habeas petitioner "'fails to exhaust state remedies,'" and the state court, if presented with petitioner's claim, "'would deem the claim procedurally barred,'" the federal court "'must deem the claim procedurally defaulted.'" *Id.* at 247 (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)).

Before the Appellate Division, Petitioner did not challenge her sentence on federal constitutional grounds; she simply asked the Appellate Division to exercise its discretion to "reduce the sentence in the interest of justice."  (SR 035–037.)  Thus, she failed to exhaust her

federal claim.  However, if Petitioner were to present her federal challenge to her sentence in state court now, the claim would be procedurally barred because she is permitted only one request for leave to appeal to the New York Court of Appeals (which was made and denied), *see* N.Y. Ct. App. R. 500.20(a)(2), and because Petitioner could have raised the issue on direct appeal but did not, *see* N.Y. Crim. P. Law § 440.10.2(c).  Accordingly, Petitioner's excessive sentence claim is procedurally defaulted for purposes of federal habeas review unless there is a basis to excuse her default.

A procedural default may be excused if a petitioner "demonstrat[es] 'cause for the default and prejudice' or by showing that [s]he is 'actually innocent' of the crime for which [s]he was convicted."  *Id.* (quoting *Carvajal*, 633 F.3d at 104).  But Petitioner has not demonstrated (or even alleged) sufficient cause and prejudice to excuse her default, nor has she identified any "new evidence" that would support an actual innocence claim.  *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).  Thus, Petitioner's excessive sentence claim is procedurally defaulted.  *See Jones*, 694 F.3d at 247; *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 1991).

Moreover, even if Petitioner's excessive sentence claim were not barred, it would still fail on the merits.  The law is clear that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Jones v. Racette*, No. 15-cv-7297 (JPO), 2016 WL 7189851, at *8 (S.D.N.Y. Dec. 12, 2016) (rejecting excessive sentence claim because petitioner "d[id] not argue that the sentence falls outside of the statutory range"); *Sorrentino v. Lavalley*, No. 12-cv-7668 (VSB), 2016 WL 3460418, at *4 (S.D.N.Y. June 21, 2016) (rejecting excessive sentence claim because, "in the absence of a challenge to the relevant statute itself, an excessive-sentence claim may only be maintained if the sentence imposed fails to comply with state law").  Here, Petitioner received

10

concurrent five- and three-year sentences for attempted first-degree assault and for second-degree assault. For the attempted first-degree assault, she could have received a maximum determinate sentence of up to fifteen years, and for the second-degree assault, she faced a maximum determinate sentence of up to seven years. *See* N.Y. Penal Law § 70.02(3)(b), (c). Thus, because her aggregate five-year sentence falls well within the statutory range, Petitioner is not entitled to relief on this ground.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT the petition is denied. Furthermore, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Court also certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Petitioner seeks to appeal this Order *in forma pauperis*, any appeal would not be taken in good faith. *See Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (instructing that *in forma pauperis* status should be denied for the purpose of an appeal where the appeal would "lack . . . an arguable basis in law or fact"). The Clerk of the Court is respectfully directed to send a copy of this Order to Petitioner and to close this case.

SO ORDERED.

Dated:       January 19, 2017
             New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/19/17

11